MARITA V. WALTHER, *Adm'x vs.* FERGUS J. McOSKER *et al., Co-adm'rs.*

MAY 27, 1958.

PRESENT: Condon, C. J., Roberts, Andrews and Paolino, JJ.

PAOLINO, J. This bill in equity was brought by the complainant individually and as administratrix of the estate of her late mother, Margaret A. Comstock, against the respondents, as co-administrators of the estate of Julia R. Adams, to obtain the return of certain securities. After a hearing in the superior court on bill, answer, replication and proof a final decree was entered denying and dismissing the bill of complaint. The cause is before us on the complainant's appeal from such decree.

It appears from the evidence that Julia R. Adams, who was the sister of complainant's mother Margaret A. Comstock, was the owner of certain securities; that about 1940, after her husband's death, she placed these securities in the joint names of herself and Dr. John C. Myrick with the right of survivorship and not as tenants in common; that Dr. Myrick had known her professionally; that she also maintained a safety deposit box in a local bank which stood in both their names from about 1940 to the time of her death; that although he had a key to the box he never used it; that she received all the dividend checks from such securities; that the only time Dr. Myrick saw her was when she would bring the dividend checks to his office to have them signed by him; and that he never personally received the proceeds from any of such dividends.

After the death of Julia R. Adams on September 17, 1954, complainant and her mother arranged with Dr. Myrick to go to the safety deposit box to examine and remove the contents. The box contained the securities involved in the instant case. At the bank the doctor gave the key to the safety deposit box to complainant's mother and he had the box transferred to the names of complainant and her mother. Doctor Myrick did not examine the securities at this

time and he did not remain with complainant and her mother while they examined the contents of the box.

The securities were left in the safety deposit box by complainant's mother from the time of the opening of the box in September 1954 to October 1954 when they were taken by complainant and her mother to Dr. Myrick's office. At this meeting Dr. Myrick signed the securities, which were handed to him by Fergus J. McOsker, the mother's attorney. After they were endorsed by the doctor they were returned to complainant's mother and replaced in her safety deposit box by complainant. She testified that shortly thereafter, due to her mother's illness, she brought the securities to Mr. McOsker for listing and safekeeping. Her mother went to the hospital on that morning and died on November 1, 1954.

The bill of complaint alleges in substance that Julia R. Adams and Dr. Myrick were joint owners of the securities in question; that upon the death of Mrs. Adams the doctor became the sole owner of said stock certificates; that the doctor endorsed and delivered the certificates to complainant's mother without limitation; that the latter assumed complete control and dominion over the certificates; that they were turned over to Fergus J. McOsker for safekeeping as assets of the estate of complainant's mother; that respondents now possess the certificates under a claim that they are assets of the estate of Julia R. Adams; and that they have refused to turn them over to complainant.

Harriet Comstock Rucker, a cousin of complainant, was called as a witness by her. She testified that Julia R. Adams had told her that Dr. Myrick knew his name was on the securities; that she, Mrs. Adams, had told him that he had the key to the box and if he needed the stock he could take it at any time he wanted to and do whatever he wanted with it; and that it was his to dispose of at his pleasure.

On the other hand Dr. Myrick, who was called as a wit-

ness by complainant, denied that Mrs. Adams had at any time told him the stock belonged to him or that he could dispose of it as he wished. He testified that the certificates were never in his possession; that he never saw them; that he never claimed ownership thereof; that Mrs. Adams did not tell him why she was putting his name thereon or that they were in the safety deposit box and available to him; and that he had no idea where they were. He also testified that he had asked her during her lifetime to take his name off the stock.

The doctor also testified concerning his reasons for signing the certificates and turning over the key to the box. He stated that it was not his intention to give them to anybody and that he did not care where they went; that he signed the certificates for the same reason that he turned the key over to Mrs. Comstock; that "* * * I didn't feel I was entitled to any of this at all and I wanted no part of it and I was perfectly willing to take whatever steps were necessary to get my name off the stocks and have no connection with them at all"; and that "* * * I didn't feel I had any right to anything that belonged to Mrs. Adams * * *."

After carefully reviewing the testimony the trial justice stated that, although there was no expression of intention by Dr. Myrick to transfer title to Mrs. Comstock, nevertheless such an intention could be inferred from the doctor's conduct, which, without expression of intent or lack of intent, contained every act necessary to vest title in her. From the doctor's acts, the trial justice inferred that he intended to transfer to Mrs. Comstock all his title in the certificates in question. But he concluded that the doctor had no title to transfer. He held in effect that if the intention of Julia R. Adams was to provide a convenient conduit of title after her death from herself through Dr. Myrick to Mrs. Comstock he took no title because there was no intent to create a present interest in Dr. Myrick.

The trial justice also concluded that complainant had failed to sustain the burden of proving that Mrs. Adams had created a present interest by gift in Dr. Myrick. He stated that three elements were required to create a gift, namely, an act of donation, an intent to create a present interest, and an acceptance by the donee. He found that complainant had proved an act of donation, but he discounted completely Mrs. Rucker's testimony on the question of intent and found specifically that complainant had failed to sustain the burden of proof as to Mrs. Adams' intent. He also found that there was no proof whatsoever that Dr. Myrick ever accepted the gift, even if it were assumed that a gift was intended and made by Mrs. Adams. He accepted the doctor's testimony as true and stated that his act of turning over the box to Mrs. Comstock, without knowledge of its contents, and his signing the certificates were consistent with his claim of lack of pecuniary interest or title in the stock. Finally, the trial justice stated that there was no evidence from which he could infer that, in spite of his denials, Dr. Myrick did accept a gift of the stock from Mrs. Adams.

In accordance with our well-established rule we shall consider only those reasons of appeal which complainant has briefed and argued, namely, reasons of appeal 1, 2 and 3. The others having been neither briefed nor argued are deemed to be waived. *Nelson* v. *Dodge,* 76 R. I. 1. Under said three reasons of appeal complainant contends that the final decree is against the law, the evidence and the weight thereof. In other words she is contending that the trial justice was clearly wrong in his findings of fact and that he erred in applying the law. The complainant's contentions amount in effect to a claim that he was clearly wrong in rejecting Mrs. Rucker's testimony and that he was also wrong in accepting Dr. Myrick's testimony.

It is well settled that in equity causes the findings of fact made by a trial justice on conflicting evidence will not

be set aside unless they are clearly wrong and fail to do justice between the parties. *Prudential Ins. Co. of America* v. *Tutalo,* 55 R. I. 160, 162. It is also well settled that since the trial justice has the opportunity to see and hear the witnesses, his findings on conflicting evidence are entitled to great weight unless they are clearly wrong. *Parness* v. *Weiner,* 77 R. I. 289, 294.

After carefully reading the transcript, we cannot say that the trial justice was not warranted in finding that there was insufficient evidence to prove the necessary intent on the part of Mrs. Adams to effectuate the alleged gift to Dr. Myrick; nor can we say that his finding that complainant had failed to prove Dr. Myrick's acceptance of the alleged gift by Mrs. Adams was unwarranted. On this point he accepted the doctor's testimony and rejected that of Mrs. Rucker. These findings of fact are fully supported by the evidence. The decision of a trial justice based upon conflicting evidence is entitled to great weight. Since we cannot say that he is clearly wrong in his findings of fact, we cannot disturb them.

The burden of proof was upon the complainant to prove the alleged gift by satisfactory evidence. See *Stiness* v. *Brennan,* 51 R. I. 284. Having failed to sustain such burden, insofar as it related to proof of intent to make a gift and also to proof of its acceptance by the alleged donee Dr. Myrick, it is our opinion that the trial justice did not err in denying and dismissing the bill. See *Carr* v. *MacDonald,* 70 R. I. 65, 74; *Weber* v. *Harkins,* 65 R. I. 53, 59; *Bank of Manhattan Trust Co.* v. *Gray,* 53 R. I. 377, 380; *Raferty* v. *Reilly,* 41 R. I. 47, 50.

We believe it is pertinent to point out the following special facts in the instant case, namely, that unlike the general run of cases where the issue of gifts inter vivos arises, the alleged donee in the case at bar is not a party to this action and he is not claiming any interest or right in the securities. Nevertheless the law in cases of this kind is well

settled in this state. The burden of establishing a gift inter vivos is upon the claimant; and she must establish that the donor intended, in praesenti, to divest herself of the exclusive ownership and control over the subject matter of the alleged gift and to vest such ownership and control jointly in the alleged donee. See *Tabor* v. *Tabor,* 73 R. I. 491, 493, and cases therein cited. It is clear that the claimant in the instant case has failed to sustain such burden.

The complainant's appeal is denied and dismissed, the decree appealed from is affrmed, and the cause is remanded to the superior court for further proceedings.

*Coffey, Ward, Hoban & McGovern, Matthew E. Ward,* for complainant.

*Fergus J. McOsker, James J. Corrigan,* pro se, for respondents.